# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MAXWELL LOMAX BRACK,

       Defendant-Appellant.

UNPUBLISHED
October 25, 2018

No. 335385
Wayne Circuit Court
LC No. 16-001705-01-FC

---

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was charged with open murder[1], MCL 750.318, and was convicted by a jury of second-degree murder, MCL 750.317. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 70 to 100 years in prison. Defendant appeals his conviction and his sentence. We affirm.

## I. FACTS AND EVIDENCE

Defendant was convicted of murdering 24-year-old KG. Defendant had known KG since high school, and the two had been involved in an on-again, off-again relationship for many years. In December 2015, KG was living with her boyfriend John Black, but she was again seeing defendant. After returning home from work on December 11, 2015, KG went out to run errands. She never returned home. Later that night, Black contacted KG's family members, looking for KG. KG's sister accessed KG's iCloud[2] account, and discovered that KG was again seeing defendant. When contacted, defendant denied seeing KG in the days preceding her disappearance. The family contacted the police.

---

[1] An open murder charge "provides that where a person is indicted (or informed against) with murder of an unspecified degree, the jury, upon finding defendant guilty of murder, must also determine the degree [.]" *People v Johnson*, 427 Mich 98, 109; 398 NW2d 219 (1986).

[2] iCloud is the generic name for all of the internet services that Apple provides. One of those services is the iCloud drive. The iCloud drive is used as a way to back up content on various Apple products, and can be accessed by password from any mobile device or PC.

Three days later, on December 14, 2015, KG's abandoned vehicle was found in Detroit. Her personal items were still in the car, but her wallet had no cash and her cell phone was missing. Later that day, KG's body was discovered behind a vacant house, in a trash receptacle, across the street from defendant's house. The trash receptacle had been covered with branches and twigs. The medical examiner could not determine a cause of death, but KG's manner of death was classified as a homicide. In the course of the investigation, the police recovered surveillance recordings of a person wearing a Halloween mask withdrawing money from KG's bank account from inside her vehicle on December 11, 2015.

During the trial, a witness described seeing defendant wheel a heavy trash receptacle in front of the vacant house where KG's body was recovered, and after a phone conversation defendant moved the receptacle to the back of the house. Another witness testified that he saw defendant and KG together at a car wash on the afternoon of December 11, 2015. A plastic bag containing fiberfill and dog hair was discovered in the trash receptacle with KG's body. The prosecution presented evidence indicating that those items were consistent with plastic bags, fiberfill, and dog hair discovered in defendant's home. In addition, DNA consistent with defendant's DNA profile was also recovered from underneath KG's fingernails.

The prosecution used telephone records to show that KG's cell phone last had contact with her network at 8:01 p.m. on December 11, 2015. Records showed that defendant contacted KG at 4:53 p.m. on December 11, 2015. Records were also presented to show defendant's locations at relevant times. The records indicated that defendant was in the area of the bank where money was withdrawn from KG's account on December 11, 2015, and that he was in the area where KG's vehicle was found at 9:17 p.m. on December 12, 2015.

Defendant testified at trial that he was not with KG on the day she disappeared. He also presented witnesses to support his claim that he did not spend that day with her.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues on appeal that the evidence was insufficient to convict him of second-degree murder because the cause of the victim's death could not be determined. We disagree.

A sufficiency of the evidence claim is reviewed de novo. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We must view the evidence in a light most favorable to the prosecution. *Id.* at 515. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Second-degree murder consists of (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464.

Defendant argues that the evidence was insufficient to prove that he caused the victim's death, or to prove that she died under circumstances that support a finding of malice. He emphasizes that the prosecution's expert could not rule out the possibility that the victim died from some cause other than homicide. We disagree. Notably, defendant appears to confuse cause of death with manner of death.

Although the medical examiner, Dr. Lokman Sung, could not determine a cause of death, he explained that he ruled out other possible manners of death inconsistent with homicide because there was no indication that the victim's death was caused by any other possibility. Dr. Sung evaluated the diagnostic criteria, which included environmental factors, toxicology results, objectively suspicious circumstances surrounding the death, natural causes, disease, or suicide. Therefore, he classified the manner of death as homicide, and had no opinion on the cause of death. Dr. Sung explained that labeling a cause of death as indeterminate is appropriate only when there are two equally plausible explanations for the death. The circumstances under which the victim's body was found, including it being hidden in a garbage container, reasonably supported the conclusion that the manner of death was homicide, and he had ruled out other possible explanations for the victim's death. Dr. Sung also explained that there are methods of homicide, such as asphyxiation, that can result in death but leave no physical signs that the death was intentionally caused. However, he reasoned that, given all of the circumstances, the likely manner of death was homicide.

The defense expert, Dr. Werner Spitz, disagreed with Dr. Sung's opinion that the manner of death should be classified as homicide. Dr. Spitz opined that it was not appropriate to speculate that the victim may have died from asphyxiation, or other unnatural means, because there were no physical signs of the cause of death. Although Dr. Spitz appeared to label the manner of death as indeterminate, he never addressed the other factors in Dr. Sung's opinion, including the lack of evidence of another equally plausible cause. Dr. Spitz also seemed to give little weight to the suspicious circumstances involving the discovery of the victim's body in a trash container.

The prosecutor was not required to disprove all possible alternative causes of death beyond a reasonable doubt. Our Supreme Court has clarified that "[e]ven in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002). The conflicting opinions of Dr. Sung and Dr. Spitz created a question of fact for the jury. The jury was entitled to resolve that conflict by agreeing with Dr. Sung's testimony that the manner of death was homicide.

There was sufficient evidence to link the victim's death to defendant. One witness testified that he observed defendant and the victim together at a car wash that afternoon.

Another witness observed defendant moving a garbage container toward the location where the victim's body was discovered in a garbage container. The items in that garbage container were consistent with materials that were found in defendant's nearby home. Also, DNA that was consistent with defendant's DNA profile was found underneath the victim's fingernails. Moreover, defendant's telephone records confirmed his presence in the area of the bank where money was withdrawn from the victim's account on the night she disappeared, and in the area where the victim's car was recovered. The prosecution also presented evidence that after the victim's disappearance, defendant made inquiries about when the garbage was collected. Furthermore, evidence showed defendant was given flyers to distribute to help find the victim, but he never distributed them. It was up to the jury to determine what reasonable inferences could be drawn from the evidence and the weight to be accorded those inferences. *Hardiman*, 466 Mich at 428.

The circumstances surrounding the victim's disappearance, the discovery of her body in a trash receptacle, the absence of any evidence supporting a non-intentional cause of death, and the evidence linking defendant to the victim shortly before she disappeared, as well as to the trash container where her body was discovered, are sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant caused the victim's death under circumstances that constituted second-degree murder.

### III. SENTENCING

Defendant next argues that he is entitled to resentencing because the trial court erred in scoring the sentencing guidelines, and because the trial court sentenced him to a prison term of 70 to 100 years, which is unreasonable and disproportionate, and he cannot reasonably be expected to serve the minimum term. We disagree.

A trial court's scoring decision must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review the trial court's factual determinations for clear error. *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

The trial court's sentence represented a departure from the sentencing guidelines recommended minimum sentence range of 225 to 562 months or life. We review a trial court's departure sentence for reasonableness by determining "whether the trial court abused its discretion by violating the 'principle of proportionality,' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (*Steanhouse II*), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

First, we disagree with defendant's argument that the trial court erred by assessing 25 points for OV 3 (physical injury to a victim). MCL 777.33 provides that 25 points should be scored if a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL

777.33(1)(c). A score of 25 points is the highest number possible consistent with the instructions for MCL 777.33, which do not allow for 100 or 50 points based on the sentencing offense. See *People v Houston*, 473 Mich 399, 405-407; 702 NW2d 530 (2005). Defendant first argues that 25 points should not have been scored because the cause of death was not determined, and thus there was no evidence that the victim suffered a life-threatening or permanent incapacitating injury as required by MCL 777.33(1)(c).

The prosecution presented expert testimony that the victim's manner of death was homicide. The other possible non-intentional causes were excluded, including disease or natural causes, accident, and suicide. The defense disputed that the manner of death was homicide; nonetheless, the jury found that defendant caused the victim's death while either intending to kill her, intending to cause great bodily harm, or intending to act in wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm. See *Goecke*, 457 Mich at 464. Although the precise cause of death was never determined, a preponderance of the evidence indicated that the victim's death resulted from a bodily injury, and this conclusion is supported by the jury's verdict that defendant caused the victim's death under circumstances supporting the requisite malice element for second-degree murder. Therefore, the trial court properly assessed 25 points for OV 3.

Secondly, defendant argues that the evidence did not support the trial court's assessment of 10 points for OV 19 (interference with the administration of justice). We again disagree. MCL 777.49 provides that "[o]ffense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." OV 19 should be scored at 10 points where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). An offender who does not so interfere should receive zero points. MCL 777.49(d).

Evidence was presented that the victim's family contacted defendant shortly after the victim disappeared. He falsely denied seeing her that day and diverted suspicion away from himself. While he agreed to assist in searching for her by passing out flyers, he did not distribute any flyers in his assigned neighborhood, thereby undermining the efforts to locate the victim. Defendant's efforts to deceive and mislead the victim's family and the police during the period they were searching for her impeded the police investigation, and can be considered interference with the administration of justice for purposes of OV 19. See *People v Hershey*, 303 Mich App 330, 342-344; 844 NW2d 127 (2013) (acts of deceiving police investigators may constitute interference with the administration of justice for purposes of OV 19); *People v Ericksen*, 288 Mich App 192, 203-204; 793 NW2d 120 (2010) (a defendant's "self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him" supported a 10-point score for OV 19). Accordingly, the trial court did not err by assessing 10 points for OV 19.

Thirdly, defendant argues that the trial court erred by departing from the sentencing guidelines recommendation and imposing a sentence that he did not have a reasonable possibility of serving. He complains that the trial court erred by finding that he failed to show any remorse, and by increasing his sentence because he smiled when the jury found him guilty of second-degree murder instead of first-degree murder.

The sentencing guidelines are advisory only, and the trial court was not required to state substantial and compelling reasons for departing from the guidelines range. *People v Lockridge*, 498 Mich 358, 364-365, 391-392, 399; 870 NW2d 502 (2015). However, the trial court was required to impose a reasonable sentence, as determined by the principle of proportionality. The principle of proportionality requires that a sentence be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse II*, 500 Mich at 459-460, citing *Milbourn*, 435 Mich at 636.

With regard to guidelines departures,

[w]here there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*People v Steanhouse*, 313 Mich App 1, 45-46; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part, rev'd in part on other grounds in *Steanhouse II*, 500 Mich 453 (2017), quoting *Milbourn*, 435 Mich at 659-660.]

In addition,

[f]actors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense, *People v Houston*, 448 Mich 312, 321; 532 NW2d 508 (1995); (2) factors that were inadequately considered by the guidelines, *id*. at 324; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, *id*. at 323; *Milbourn*, 435 Mich at 660, the defendant's misconduct while in custody, *Houston*, 448 Mich at 323, the defendant's expressions of remorse, *id*., and the defendant's potential for rehabilitation, *id*. [*Steanhouse I*, 313 Mich App at 46.]

Defendant argues that it was improper for the trial court to increase his sentence by 10 years because he smiled at his attorney when the jury announced its verdict. The trial court's comment in this regard was made in the context of explaining why it believed that defendant's conduct showed he lacked remorse for what occurred. A defendant's lack of remorse is a proper consideration at sentencing. *People v Edgett*, 220 Mich App 686, 695 n 8; 560 NW2d 360 (1996). Defendant has an absolute right to maintain his innocence; however, his conduct after the jury's verdict was read demonstrated his insensitivity toward the gravity of the situation. His failure to acknowledge the seriousness of the matter also demonstrated his poor potential for rehabilitation. Accordingly, it was not inappropriate for the court to consider defendant's conduct after the jury's verdict was read as a basis for fashioning an appropriate sentence, and to exceed the guidelines on the basis of that conduct.

The trial court also offered additional reasons to justify its decision to exceed the sentencing guidelines. Although defendant was only 25 years old at the time of sentencing, he was already a third-offense habitual offender. Defendant has a history of domestic violence with the victim and other former girlfriends, some of which did not result in criminal charges. In addition, defendant went to prison in 2012 for felonious assault and felony-firearm.

Defendant has a history of domestic violence or acting out violently against those closest to him. This case represents an escalation of that pattern of violence. Defendant clearly is a danger to society, and his escalating criminal history and conduct after the jury's verdict was read in this case demonstrates that he is not likely to be rehabilitated. Considering the circumstances surrounding the instant offense and defendant's criminal background, the trial court's sentence, while severe, is not disproportionate to the offense and the offender. Defendant has not shown that the trial court abused its discretion.

Defendant also seeks relief on the ground that he is not reasonably likely to serve the sentence imposed of 70 to 100 years. At the time of sentencing, defendant was 25 years old. He received credit for 236 days served. Defendant relies on *People v Moore*, 432 Mich 311, 325-326; 439 NW2d 684 (1989), for the rule that an indeterminate sentence is invalid if it effectively precludes the possibility that the defendant would be eligible for parole within his lifetime. However, *Moore* was impliedly overruled in *People v Merriweather*, 447 Mich 799; 527 NW2d 460 (1994). See *People v Kelly*, 213 Mich App 8, 14-16; 539 NW2d 538 (1995). The current state of the law does not require a court to evaluate the likelihood that a defendant will be reasonably able to serve a sentence within his natural life. Instead, the sentence is to be reviewed for proportionality. *Id*. at 15-16. As explained earlier, defendant's sentence does not violate the principle of proportionality. In any event, defendant would be 94 years old after serving his minimum term and it is reasonably possible for defendant to live to age 94, so defendant is not entitled to relief on this basis.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel at trial, and that the trial court erred by denying his motion for a new trial on this basis. We disagree. The trial court denied defendant's motion after conducting a *Ginther*[3] hearing.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error. *Id*. Whether the facts as found by the trial court establish a violation of the defendant's right to the effective assistance of counsel is a question of constitutional law, which is reviewed de novo. *Id*. To establish ineffective assistance of counsel, defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that counsel's representation so prejudiced defendant that he was denied a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on defendant to produce factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that defense counsel was ineffective for not presenting the testimony of an expert in cell phone data and analysis. At the *Ginther* hearing, defense counsel testified that he obtained approval to hire an expert in cell phone analysis and consulted various persons familiar with that field. After consulting one known expert, he concluded that expert testimony in that area was not necessary and might actually be problematic or harmful to the defense. Therefore, he declined to call an expert at trial. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defendant must overcome the strong presumption that his attorney exercised sound trial strategy. *Id*.

In this case, counsel's decision not to call an expert was clearly a matter of trial strategy made after consultation with persons familiar with cell phone data analysis. Moreover, defendant has not shown that an expert's testimony would have changed the outcome of this trial. Defendant asserts that the victim's cell phone records do not correspond with Black's testimony regarding when the victim left work, returned home, and ran errands into the early evening hours. Defendant appears to argue that a cell phone expert could have used the cell phone records to cast doubt on Black's credibility. However, defendant was free to challenge Black's testimony on the basis that the victim's cell phone records were inconsistent with Black's timeline of events without the aid of an expert. Furthermore, defendant suggests that Black may have been dishonest about the victim leaving his home after she returned home from work around noon. However, there is no dispute that the victim delivered groceries to her aunt later that afternoon. Even if Black may not have been accurate about what the victim was doing before she left to run errands (e.g., take a nap), it is apparent that she was alive and seen by her aunt after she left Black's home that afternoon. In addition, contrary to what defendant asserts, Black did not testify that he sent a text message to the victim at 6:30 p.m. on December 11, 2015. Rather, Black testified that he spoke to the victim at that time and she told him that she still had some more errands to run. The victim's phone records confirmed that she received a call from Black at 6:25 p.m. that evening, which lasted approximately 17 minutes.

The prosecution's expert witness testified that Black's telephone had not communicated with any towers in the areas where the victim's body was discovered or where the victim's telephone stopped communicating with her network. Conversely, defendant's records showed that he contacted the victim at 4:53 p.m. on December 11, 2015. The records also showed that he was in the area of the bank at the time when money was withdrawn from the victim's account on December 11, 2015, and that he was in the area where the victim's vehicle was found at 9:17 p.m. on December 12, 2015. Defendant has not offered any factual support to suggest that an independent expert might have been able to provide a different interpretation of the cell phone data, or confirm defendant's testimony regarding his whereabouts the day the victim disappeared. The burden was on defendant to produce factual support for his claim of ineffective

assistance of counsel. *Hoag*, 460 Mich at 6. Moreover, as defense counsel explained, defendant's version of events was generally consistent with the prosecution's records, which showed that defendant was in locations where he might reasonably be expected to be.

For all of these reasons, defendant has not overcome the presumption that defense counsel's decision not to call a cell phone expert was objectively reasonable, and he has not established any reasonable probability that failure to call a cell phone expert affected the outcome of defendant's trial.

Defendant also argues that defense counsel was ineffective for not timely acting to obtain a surveillance recording from the car wash where a witness claimed to have seen defendant and the victim on the afternoon of the day she disappeared. We again disagree.

First, the record demonstrates that defense counsel investigated whether a recording could be obtained, but determined that one did not exist. Second, the record indicates that the police and prosecution also investigated whether a surveillance recording could be obtained, and they were likewise unable to obtain one. Third, defendant was not charged in this matter until almost two months after he claimed to have been at the car wash. Even if a recording had ever existed, there is no evidence that it would have still been available two months later.

Because there is no evidence that a recording existed, or if one did exist that it would have still been available once defendant was charged, and even the police and prosecution were unsuccessful in obtaining a surveillance recording of the car wash, there is no basis for concluding that defense counsel can be deemed ineffective for not obtaining a recording.

## V. ADMISSION OF DEFENDANT'S TIMELINE DOCUMENT

In his last issue, defendant complains that he was not allowed to introduce into evidence a written document he prepared that contained a timeline of his activity during the week preceding the victim's disappearance. Defendant appears to argue both that the trial court erred by excluding the timeline document as inadmissible hearsay and that defense counsel was ineffective for not calling a cell phone expert in lieu of trying to admit the timeline. Neither argument has merit.

We review a trial court's evidentiary rulings for an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). The trial court excluded the document as inadmissible hearsay. Under MRE 801(c), hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *People v McLaughlin*, 258 Mich App 635, 651; 672 NW2d 860 (2003). "Hearsay is not admissible except as provided by the rules of evidence." *Id.*; MRE 802. Defendant's timeline document consisted of his own statements of his activities during the week preceding the victim's disappearance. It was an out-of-court statement that defendant wanted to admit to prove the truth of the matters asserted therein. As such, the document qualifies as hearsay. Defendant has not identified any hearsay exception or exemption that would allow its admission. Accordingly, the trial court did not abuse its discretion by excluding the document as inadmissible hearsay.

Further, the record does not support defendant's argument that defense counsel deprived him of a substantial defense by seeking to admit the timeline document in lieu of calling an expert witness to testify. Defense counsel denied that the document was intended to replace an expert's testimony. Regardless, defendant testified at trial, and the trial court's exclusion of the timeline document did not prevent defendant from testifying regarding each of the matters referenced in the document. Indeed, the trial court allowed defendant to refer to the document to refresh his recollection while testifying. Thus, defendant was able to fully present his timeline to the jury. Finally, as discussed earlier, defendant has not established that counsel's failure to call a cell phone expert deprived him of the effective assistance of counsel.

## VI. CONCLUSION

Defendant's conviction and sentence are both affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause